**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LIJANA SHESTOPAL, individually and on behalf of all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) ST. JOHN'S UNIVERSITY, NEW YORK, ) ) ) Defendant. ) | Case No.<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Lijana Shestopal ("Plaintiff") brings this Class Action Complaint against Defendant St. John's University, New York ("SJU"), on behalf of herself and all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**I.   NATURE OF THE ACTION**

1.   Defendant SJU is a private university founded in 1870 in Brooklyn, New York. The university operates six schools across seven campuses with an enrollment of over 21,000 students, and offers a variety of degrees spanning over one hundred majors.[1] In an effort to market its degrees and enroll more students, SJU sent (or directed to be sent on its behalf) unsolicited text messages to the wireless telephones of Plaintiff and each of the members of the Class without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

---

[1] St. John's University, At a Glance – Fall 2017, https://www.stjohns.edu/sites/default/files/documents/ir/fact-book/5-ataglance_2017_.pdf (last visited July 19, 2018).

2. Neither Plaintiff nor the other Class members ever consented in writing, authorized, desired or permitted SJU to send text messages to their wireless telephones.

3. By sending such unauthorized text messages, SJU caused Plaintiff and each of the Class members actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited text messages, and the monies paid to their wireless carriers for the receipt of such messages.

4. In order to redress these injuries, Plaintiff seeks an injunction requiring SJU to cease all unsolicited text message activities, and an award of statutory damages to Plaintiff and the Class members under the TCPA, together with costs and reasonable attorneys' fees.

## II.   JURISDICTION AND VENUE

5. This Court has original jurisdiction over Count I, pursuant to 28 U.S.C. § 1331, because it arises under the laws of the United States.

6. The Court has personal jurisdiction over Defendant SJU, pursuant to the Illinois long-arm statute, 735 ILCS 5/2-209, because SJU committed tortious acts within the State of Illinois, and a substantial portion of the wrongdoing alleged in this Complaint took place in or was directed toward the State of Illinois. In addition, by sending mass text messages into the State soliciting its services, SJU has sufficient contacts in the State to render the exercise of jurisdiction by this Court permissible.

7. Venue is proper, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this action occurred in this District.

## III.   PARTIES

*Plaintiff*

8. Plaintiff Lijana Shestopal is an individual domiciled in Cook County, Illinois, and is a citizen of Illinois.

*Defendant*

9. Defendant St. John's University, New York is a not-for-profit corporation duly organized and existing under the laws of the State of New York, with its primary campus located at 8000 Utopia Parkway, Queens, New York 11439.

## IV. FACTUAL BACKGROUND

*Background on Unsolicited SMS Activity*

10. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

11. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

12. SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

13. According to a study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from coupons to

phishing schemes—sent directly to user's cell phones."[2] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[3]

14. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

15. Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

16. As of October 16, 2013, senders of SMS message advertisements for goods or services must obtain the recipient's prior express *written* consent.

***SJU's Unsolicited Text Message Advertisements to Plaintiff***

17. As part of its advertising campaign, SJU has sent and continues to send unsolicited text messages to Plaintiff's and the Class members' wireless phones without prior express written consent.

18. At all relevant times, Plaintiff was and is the owner of the wireless telephone number ending in 2249.

19. In 2011 or 2012, Plaintiff researched possible options for going back to school. As part of this research, Plaintiff downloaded a guide from SJU's website, which provided information about online courses available at SJU.

20. In order to download the guide, Plaintiff was required to enter her name, email, and phone number on the SJU website. At no time during this process did the SJU website provide to Plaintiff any disclaimer that she would receive text messages. Plaintiff never

---

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx.

[3] *Id.*

-4-

consented to, authorized, desired or permitted SJU to send text messages to her wireless telephone. Plaintiff only provided her name, email, and phone number in order to download the course guide.

21. Years later, on or around October 1, 2015, SJU transmitted or directed to be transmitted an unsolicited text message to Plaintiff's wireless telephone promoting its master's degree programs:

> Considering starting off the New Year with your online Master's degree at SJU? Reply YES to learn more about getting started in 2016. –SJU Admissions

22. In early 2018, SJU transmitted or directed to be transmitted another substantially similar unsolicited text message to Plaintiff's wireless telephone.

23. The purpose of SJU's text messages was to advertise SJU degrees to Plaintiff and other recipients of substantially similar text messages.

24. On information and belief, SJU sent or transmitted, or had sent or transmitted on its behalf, the same (or substantially the same) text messages *en masse* to a list of thousands of wireless telephone numbers or randomly generated phone numbers.

25. On information and belief, SJU sent these text messages to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

26. Plaintiff and other Class Members never consented to in writing, requested, or otherwise desired or permitted SJU to send or transmit text messages to their wireless phones.

## V.    CLASS ALLEGATIONS

27. Plaintiff brings this action, as set forth below, on behalf of herself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals in the United States: (a) to whom, within the last four years of the filing of this action, SJU, or someone on its behalf, sent a non-emergency, unsolicited text message to the individuals' wireless telephones through the use of an automatic dialing system; and (b) who did not voluntarily provide their wireless telephone numbers to SJU for the purpose of permitting SJU to send them text messages (the "Class").

Excluded from the Class are SJU and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

28. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

29. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been damaged by SJU's wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from SJU's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

30. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. the manner in which SJU obtained Plaintiff's and the Class' wireless telephone numbers;

   b. whether the equipment SJU used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

   c. whether SJU's conduct constitutes a violation of the TCPA;

   d. whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

   e. whether Plaintiff and the Class are entitled to treble damages based on the willfulness of SJU's conduct; and

   f. whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

31. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

32. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiff and her counsel.

33. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** SJU has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

34. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against SJU, so it would be impracticable for Class members to individually seek redress for SJU's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On behalf of the Class)

35. Plaintiff incorporates by reference paragraphs 1-34 as if fully set forth herein.

36. Defendant SJU and/or its agents sent unsolicited commercial text messages to the wireless telephone numbers of Plaintiff and the other Class members *en masse* without their prior express written consent.

37. SJU sent the text messages, or had them sent on its behalf, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

38. SJU utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

39. By sending the unsolicited text messages to Plaintiff and the Class, SJU has violated 47 U.S.C. § 227(b)(1)(A)(iii).

40. As a result of SJU's unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the unsolicited text messages on their wireless phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

41. Should the Court determine that SJU's conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## VII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Lijana Shestopal, individually and on behalf of the Class, requests that the Court enter an Order as follows:

A. Certifying the Class as defined above, appointing Plaintiff Lijana Shestopal as the representative of the Class, and appointing her counsel as Class Counsel;

B. Awarding of actual and statutory damages;

C. Requiring SJU to cease all text message activities initiated without prior express written consent, and otherwise protecting the interests of the Class;

D. Awarding of reasonable attorneys' fees and costs; and

E. Awarding such other and further relief that the Court deems reasonable and just.

Dated: August 8, 2018                                          Respectfully submitted,

By: */s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
Ke Liu
*kliu@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

*Counsel for Plaintiff
and the Proposed Putative Class*